UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| STEPHEN STUBBS, et al., | Case No. 2:15-cv-02152-JCM-GWF |
|---|---|
| Plaintiffs, | |
| v. | ORDER |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendants. | |

Presently before the court is defendants Las Vegas Metropolitan Police Department and Lt. Yasenia Yatomi's motion for summary judgment.[1] (ECF No. 22). Plaintiffs Kevin Desmairas and Stephen Stubbs have filed a response (ECF No. 27), and defendants have filed a reply (ECF No. 41).

**I.     Background**

This case involves Desmairas's alleged detention for a traffic violation and the corresponding arrest of his attorney Stephen Stubbs for "obstruction" in connection with Stubbs's purported efforts to represent Desmairas during the traffic stop. (ECF No. 1 at 3–5). Of some relevance, Desmairas is a member of the "Bikers for Christ ministry group." (*Id.* at 2).

Plaintiffs allege the following claims: (1) malicious prosecution under 42 U.S.C. § 1983; (2) violation of the First, Fourth, and Fourteenth Amendments under § 1983; (3) a *Monell* claim

---

[1] The court will refer to Yatomi's current rank throughout this motion, in the interest of consistency.

1 | under § 1983; (4) malicious prosecution under state tort law; (5) intentional infliction of
2 | emotional distress; (6) false arrest and imprisonment; and (7) negligence *per se*.[2] (*Id.*).

## II.  Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id.*

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress &*

---

[2] As will become relevant, plaintiffs allege that this court exercises supplemental jurisdiction over the state law claims based upon 28 U.S.C. § 1367. (ECF No. 1). Furthermore, it appears that all claims, except for the third, are alleged against both defendants.

*Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56.")).

**III.   Discussion**

    *a.   Federal claims*

        *i.   Individual liability under 42 U.S.C. § 1983*

When a plaintiff brings a claim under 42 U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity. *See Spoklie v. Montana,* 411 F.3d 1051, 1060 (9th Cir. 2005). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Indeed, "[q]ualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

The doctrine protects government officials performing discretionary functions from liability for civil damages as long as their conduct does not violate "clearly established statutory

or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244. Qualified immunity may apply even if the defendant makes a mistake of law or acts based upon a mistake of fact. *Id.* at 231.

Deciding whether an officer is entitled to qualified immunity is a two-step inquiry. *Id.* at 232. First, the court assesses whether the plaintiff has alleged or shown a violation of a constitutional right. *Id.* Second, the court decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.* The Supreme Court has instructed that district judges may use their discretion when deciding which qualified immunity prong to address first, based upon the circumstances of the case at issue. *See id.* at 236.

The second prong of the qualified immunity test requires a court to determine whether the right plaintiff claims was violated was "clearly established." *See id.* "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The dispositive question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*

Further, "clearly established law" may "not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).[3] Indeed, "[w]ithout that 'fair notice,' an officer is entitled to qualified immunity." *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1777 (2015).

To be clear, "[w]here the defendant raises the affirmative defense of qualified immunity, the initial burden is upon the plaintiff to show that the rights were clearly established, after which the defendant bears the burden of proving that his conduct was reasonable." *Shoshone-Bannock*

---

[3] The Court, in *al-Kidd*, explicitly noted that it "ha[d] repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." 563 U.S. 731, 742 (2011) (citation omitted).

4

*Tribes v. Fish & Game Comm'n, Idaho*, 42 F.3d 1278, 1285 (9th Cir. 1994) (citing *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991)); *see also Miller v. Monroe Sch. Dist.*, 159 F. Supp. 3d 1238, 1248 (W.D. Wash. 2016) (citing *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000)).

Here, defendants have asserted qualified immunity; therefore, plaintiffs must first demonstrate that their rights were "clearly established" within the "particularized" factual context of the encounter. *See White*, 137 S. Ct. at 552 (quoting *Anderson*, 483 U.S. at 640); *Shoshone-Bannock Tribes*, 42 F.3d at 1285.

Instead, plaintiffs incorrectly state that defendants shoulder the initial burden of showing qualified immunity. *See* (ECF No. 27). Regardless, plaintiffs assert four arguments to ward off defendants' invocation of qualified immunity. (*Id.*).

First, plaintiffs state that "the right to be free from an arrest which is not supported by probable cause was clearly established at the time of Attorney Stubbs' arrest." (*Id.* at 26). This argument does not "particularize[]" the facts of the arrest and therefore fails to comport with the Supreme Court's reaffirmation of the qualified immunity analysis.[4] *White*, 137 S. Ct. at 552.

Second, they argue that "it was clearly established that a police officer may be liable under a theory of malicious prosecution theory for filing false charges or providing false information to the prosecuting attorney when the officer is sufficiently involved with the prosecution that it may be said he initiated the prosecution." (ECF No. 27 at 21). Plaintiffs offer *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1065 (9th Cir. 2004), in support of this assertion.

However, that case involves a motion to dismiss a § 1983 claim of malicious prosecution regarding the alleged embezzlement of public funds and claims that the First and Fourteenth Amendments were violated by restraint on political activity and racial animus. *Id.* at 1065–71. Because that case does not mirror the specific factual circumstances of this one, plaintiffs have failed to support this argument with applicable case law. *See White*, 137 S. Ct. at 552.

---

[4] It appears that plaintiffs provide an incomplete and vague citation to *Franks v. Delaware*, 438 U.S. 154 (1978), to support their discussion of Lt. Yatomi's alleged false statements. *See* (ECF No. 27). Indeed, that case involves the question of whether an attack on a warrant affidavit may require an evidentiary hearing. *See Franks*, 438 U.S. at 171–72. This question is not currently at issue.

5

Third, plaintiffs assert, citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005), that "it was clearly established that a seizure that is justified solely by the interest in issuing a traffic ticket can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." (*Id.*). However, the Court in *Caballes* rendered a decision regarding the Fourth Amendment in the context of a dog-sniff test. *Id.* Accordingly, plaintiffs again fail to satisfy their burden of providing factually specific case law illustrating that the right allegedly violated was "clearly established" at the time of the underlying events of this case. *See White*, 137 S. Ct. at 552.

Finally, plaintiffs contend that "any reasonable officer would also know that if a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." (ECF No. 27 at 21–22) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).

While the subject matter of *Berkemer* is more applicable to the instant case than many of plaintiffs' other offered cases, plaintiffs assert the previous statement and then proceed directly to the conclusion that qualified immunity should not apply. (ECF No. 27); *see also* 468 U.S. at 440 (discussing *Miranda* warnings for relatively minor infractions). Conspicuously absent from plaintiffs' qualified immunity analysis is any discussion of how the facts of the present case align with the facts of plaintiffs' offered cases. *See* (*id.*). Therefore, plaintiffs have not succeeded in their initial burden of showing—with specific attention to the facts of this case—that the plaintiffs' allegedly violated rights were clearly established. *See White*, 137 S. Ct. at 552; *LSO, Ltd.*, 205 F.3d at 1157.

In short, summary judgment will be granted as to plaintiffs' first two claims of § 1983 liability.

    *ii.*  Monell *liability*

The principal framework governing municipal liability in § 1983 actions was established

/ / /

/ / /

in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).[5] Under *Monell*, municipal liability must be based upon the enforcement of a municipal policy or custom, not upon the mere employment of a constitutional tortfeasor. *Id.* at 691. Therefore, in order for liability to attach, four conditions must be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

"To prevent municipal liability . . . from collapsing into respondeat superior liability," federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that the municipality is not held liable solely for the actions of its employees." *Board of Cnty. Comm. of Bryan City v. Brown*, 520 U.S. 397, 405, 410 (1997). Thus, a municipality will only be liable when the "execution of a government's policy or custom . . . inflicts the injury . . . ." *Monell*, 463 U.S. at 694.

"Proof of random acts or isolated events" does not fit within *Monell*'s meaning of custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds*, *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). Indeed, "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970))).

It is well settled in the Ninth Circuit that a plaintiff generally cannot establish a *de facto* policy with a single constitutional violation. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Instead, a plaintiff's theory must be founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d

---

[5] Even if a municipal employee is entitled to qualified immunity, a municipality may still be subject to *Monell* liability. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

1135 (9th Cir. 2000). "[I]solated or sporadic incidents" are insufficient to enable municipal liability. *Trevino*, 99 F.3d at 918.

Plaintiffs' complaint asserts six alleged customs as the basis of the *Monell* claim: (1) "To tolerate the failure to adequately investigate police reports"; (2) "[t]o tolerate and allow the unlawful arrests of citizens"; (3) "[t]o deprive citizens of their right to petition their government about their government"; (4) "[h]arassment and intimidation of Plaintiff Stephen Stubbs"; (5) "[h]arassing members of motorcycle clubs"; and "[t]olerating Defendant Yatomi's poor performance as an officer." (ECF No. 1 at 7–8).

Defendants challenge these allegations, contesting that plaintiffs cannot support a *Monell* claim because the alleged facts lack specificity and do not find support in the record. (ECF No. 22).

In their response, plaintiffs refer to Stubbs' previous personal experiences with Lt. Yatomi, submitting the following statement:

> [T]he facts set forth in fact section A [of the response], and incorporated herein by reference, demonstrate that there exist extensive facts from which a reasonable juror could determine an actual practice, organizational custom, or *de facto* policy existed to harass motorcycle clubs and their attorneys; and that these practices, customs, or policies caused the violation of Plaintiffs' constitutional rights.

(ECF No. 27 at 22–23).

As it pertains to alleged actions or events occurring before the incident at direct issue in this case, plaintiffs neither identify nor discuss what specific constitutional violations are supposedly violated by the facts presented in section A of the response. (*Id.*). Overall, it appears that plaintiffs in large part invite the court to make their case for them. The response offers a slew of factual assertions, yet those statements remain analytically unintegrated into an argument supporting this claim. (ECF No. 27). Indeed, these assertions involve allegations of past events in different circumstances that fail to illustrate a specific, articulable, and recurring municipal policy that violated plaintiffs' rights.

Accordingly, plaintiffs have failed to rebut defendants' attack on the *Monell* claim. *See Celotex Corp.*, 477 U.S. at 323–24; *see also Thompson*, 885 F.2d at 1443. Thus, summary judgment will be granted as to plaintiffs' *Monell* claim.

*b. State claims*

Under 28 U.S.C. § 1367(c)(3), district courts "may decline to exercise supplemental jurisdiction over [related claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Because the court has resolved the federal claims, and they are the only claims over which the court has original jurisdiction, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims. *See, e.g., Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1101 (9th Cir. 1996) (holding that "where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice"); *see also Zelaya v. Cty. of Los Angeles*, 628 F. App'x 535, 537 (9th Cir. 2016) (instructing that a district court could consider dismissal pursuant to 28 U.S.C. § 1367(c)(3) after resolving federal claims through summary judgment).

Thus, plaintiffs' remaining state law claims will be dismissed without prejudice.

## IV. Conclusion

In sum, defendants' motion for summary judgment will be granted as to claims one, two, and three—those brought pursuant to § 1983. The court declines to exercise its supplemental jurisdiction over the remaining state law claims, and those remaining claims will be dismissed without prejudice.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion for summary judgment (ECF No. 22) be, and the same hereby is, GRANTED IN PART AND DENIED IN PART, in accordance with the foregoing.

IT IS FURTHER ORDERED that claims four (4) through seven (7) of plaintiffs' complaint be, and the same hereby are, DISMISSED, without prejudice.

DATED THIS 4th day of May, 2017.

_____
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE